UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RONNIE D. HUBBARD                                        PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:03CV1075LS

UNITED STATES DEPARTMENT
OF AGRICULTURE                                           DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff Ronnie Hubbard brought this action asserting claims for race and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., for breach of contract and for defamation.  The case was tried to the court, sitting without a jury, and the court, having considered the evidence adduced at trial, finds and concludes as follows.

During September 1998, plaintiff was employed as a food safety inspector by the Department of Agriculture Food Safety Inspection Service at the B.C. Rogers poultry plant in Morton, Mississippi.  Plaintiff was scheduled to work on Saturday, September 19, but wanted to be off that day so that he could attend a music festival in Greenville, Mississippi.  He asked his supervisor Dr. Christine Dumal to be excused from working that day, but was told he would not be excused unless he found someone to cover for him.  Prior to Saturday, he had not found anyone to work in his place.

Around 5:00 a.m. that Saturday morning, plaintiff telephoned
Dr. Dumal at home and told her he was sick and could not come to
work.  Dr. Dumal responded that his leave was not approved, and
that regardless of his condition, he would need to come to work as
scheduled.  He failed to do so, and when he arrived at work the
following Monday, Dr. Dumal called him into her office, and
presented him with a letter of caution for being absent without
leave (AWOL) on Saturday.  Dr. Dumal was authorized to convert the
AWOL to sick leave if plaintiff had given her some plausible
explanation as to his absence.  Plaintiff refused to read or sign
the letter of caution, and instead, reacted angrily; he slapped
his hand on Dr. Dumal's desk and threw his hard hat to the floor.
Although it seems clear that plaintiff's actions were not intended
to be threatening toward Dr. Dumal, but were merely an expression
of his frustration and disappointment with the situation, Dr.
Dumal viewed his conduct as violent and as a threat toward her.

Dr. Dumal telephoned the office of Dr. James Burt, the deputy
district manager who was plaintiff's second-line supervisor, about
what had transpired, and on Tuesday, September 22, wrote to him
requesting that disciplinary action be taken.  Dr. Dumal wrote:

> The violence displayed by Mr. Hubbard is unacceptable.
> I as a supervisor should not be expected to endure
> threats be they physical or verbal.  And I for one do
> not know if in the future Mr. Hubbard will  limit his
> threats to inanimate objects.  This type of behavior
> should not be tolerated, and if allowed to exist will
> make our agency as unsafe as the Postal system.
> Additionally he displayed insubordination when I asked

2

> him to listen to the contents of the letter.  As a
> result of these incidences I am requesting that
> appropriate action be taken immediately.

As Dr. Burt was unavailable, the request was handled by Dr.
Mariana Loret de Mola, the circuit supervisor.  By letter dated
September 24, 1998, Dr. de Mola communicated with James R. Duoos,
a USDA Employee Relations Officer, concerning the "act of physical
violence by" plaintiff during the meeting with Dr. Dumal, and he
requested that "appropriate action" be taken against plaintiff for
his behavior.  By letter dated October 22, 1998, Mr. Duoos
notified plaintiff that he would be suspended from duty for five
days without pay for conduct unbecoming a federal employee.  The
suspension was later reduced to one day, based on the
recommendation of an oral hearing officer who had interviewed
plaintiff, and plaintiff was so notified by letter dated January
28, 1999.  Plaintiff filed an EEOC charge on March 5, 1999,
claiming that his suspension was motivated by his race and gender
and was in retaliation for prior protected activity.

Although plaintiff submitted proposed findings and
conclusions in which he asserted that Dr. Dumal discriminated
against him based on race and gender, and on account of his prior
grievance, plaintiff testified clearly at trial that he is making
no such claim.  He obviously believes that Dr. Dumal's action with
respect to his absence from work on September 19, 1998 (namely,
her issuing an AWOL) was not in accordance with the governing

collective bargaining agreement and amounted to a breach of that
agreement.  He also believes that Dr. Dumal's statements to her
superiors regarding plaintiff's allegedly violent/ threatening
conduct toward her in the meeting on September 21 were false and
defamatory.  However, he does not genuinely believe, and by his
own admission has no proof that Dr. Dumal's actions toward him,
including issuance of the AWOL in the first place and requesting
disciplinary action in the wake of the September 21 meeting, were
motivated by a racial or gender or retaliatory animus.[1]  Instead,

---

[1]     Plaintiff testified that he had worked each of the three
Saturdays preceding Saturday, September 19, and his white
coworker, Ida Walker, had not worked any Saturdays.  He further
testified that the leave procedure, as established by the
collective bargaining agreement, was that when an employee works
three consecutive weeks on a six-day schedule, i.e., on three
consecutive Saturdays, it becomes the supervisor's responsibility
to make an effort to find the employee relief so that he is not
required to work another Saturday.
     It appears undisputed that plaintiff, Ida Walker, and another
white coworker had each asked to be off on Saturday, September 19.
Dr. Dumal maintained that leave time was granted on a first-come
basis and that Ida Walker and the other worker had asked to be off
before plaintiff put in his request.  She further testified that
it was the employees' responsibility to find replacements if they
wanted to be off, and yet as a favor to them, she tried to help
find other inspectors willing to work in their place.  On that
particular occasion, she was only able to find two inspectors who
were willing to work on Saturday, September 19.  She gave the
replacements' names to the three who had requested to be off,
hoping that Ida Walker and the other worker would be gracious and
offer to let plaintiff use one of the replacements and have the
day off, since he had worked so many Saturdays.  They were not
gracious, as she had hoped, and as a result, there was no
replacement for plaintiff.
     Plaintiff testified that Dr. Dumal could have and should have
given him the day off, letting him use one of the replacements she
had found without first offering them to Ida Walker and the other
coworker, and that he felt that she did not do this because he was

4

plaintiff's claims of discrimination and retaliation are grounded solely on the actions of Dr. de Mola, and specifically, on Dr. de Mola's request that disciplinary action be taken against plaintiff in connection with plaintiff's alleged angry outburst toward Dr. Dumal.  In the court's opinion, plaintiff failed to prove these claims.

First, plaintiff offered no proof of any sort that the actions of which he complains were taken based on his gender, so that claim is due to be dismissed.  He did undertake to show that Dr. de Mola's actions were retaliatory; but in the court's opinion, the evidence does not support this claim.  Plaintiff presented evidence that he filed a grievance in March 1996 in which he complained he had been discriminated against.[2]  However, Dr. De Mola testified credibly that he was not familiar with plaintiff's prior grievance and that at the time he requested that

---

a black male.  He then testified, however, that this was just his feeling, and that he had no proof to support that feeling.

[2]     Plaintiff's earlier grievance, dated August 2, 1996, concerned defendant's denial of plaintiff's request for assignment to a new duty station.  Plaintiff complained that whereas he (and others) had been told that an employee could not seek a transfer until he had been employed for a year, defendant reassigned another employee, John MaGee, from one duty station to another when he had been employed less than four months.  While plaintiff declared in his grievance that "I feel that I have been discriminated against to the highest level," nowhere in the grievance did he assert the basis for the perceived "discrimination," be it race, gender, or anything else.  The court, however, will assume for the sake of argument that the grievance concerned discrimination prohibited by Title VII, and that it thus constituted activity protected by Title VII.

disciplinary action be taken against plaintiff for his conduct toward Dr. Dumas, he was not aware of plaintiff's prior grievance.[3]   The court accepts Dr. de Mola's testimony and therefore concludes that plaintiff's retaliation claim fails.   See Green v. Administrators of Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002)(plaintiff claiming retaliation under Title VII must prove that (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus existed between the protected activity and the adverse employment action); Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1208 (11th Cir. 2001) (11th Cir. 1997) ("A decision maker cannot have been motivated to retaliate by something unknown to him."); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("[E]mployer's knowledge that the plaintiff engaged in protected activity is absolutely necessary to establish . . . prima facie case").   As plaintiff has not presented proof in support of the third element of his prima facie case, summary judgment on his retaliation claim is in order.

Plaintiff's charge of race discrimination is based on allegations that white workers who engaged in more serious misconduct than he was alleged to have engaged with Dr. Dumal "got

---

[3]     Dr. de Mola testified that his office receives around 1,200 grievances a year, and that although plaintiff's grievance may have crossed his desk at some point, he was not actually aware of it.

off" with only a letter of caution from Dr. de Mola whereas Dr. de Mola, without even bothering to get plaintiff's side of the story, requested that disciplinary action be taken against plaintiff.  In support of his claim in this regard, plaintiff has offered evidence of a number of incidents involving (presumably) white employees.

Under Title VII, a plaintiff must make a prima facie case of discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  "Where only circumstantial evidence of discrimination is available, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) others similarly situated were more favorably treated."  Edwards v. Grand Casinos of Mississippi, Inc., 145 Fed. Appx. 946, 948, 2005 WL 2000667, *1 (5th Cir. 2005)(citing Rutherford v. Harris County, Tex., 197 F.3d 173, 184 (5th Cir. 1999)).

The Fifth Circuit has held that in order to satisfy the fourth prong, a plaintiff "must show that others similarly situated were treated more favorably under circumstances 'nearly identical' to his."  Bouie v. Equistar Chemicals LP, 2006 WL 1736557, *3 (5th Cir. 2006) (citations omitted).  "[I]n order for circumstances to be nearly identical, the misconduct itself must be nearly identical."  Id. (citing Perez v. Tex. Dept. of Criminal

7

_Justice_, 395 F.3d 206, 213 (5th Cir. 2004) (discussing cases which held that different misconduct does not constitute a nearly identical situation)).  See also _Maniccia v. Brown_, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.") (cited in _Edwards_).  In the court's opinion, plaintiff here has failed to show that the alleged misconduct of the putative white "comparators" was sufficiently similar to warrant an inference of discrimination.[4]

The first incident cited by plaintiff as evidence of disparate treatment by Dr. de Mola involved Dr. Dumal and Dr. Carmen Herbrandson.  In an affidavit from Dr. Herbrandsen presented by plaintiff, she recounts an occasion in which she told Dr. Dumal that she was seeking to be transferred.  Dr. Dumal, she claims, got up "in her face" and yelled at her; she told Dr. Dumal to get out of her face; Dr. Dumal grabbed her wrist; and she

---

[4]   Plaintiff offered Exhibits P16 through P19 as evidence of disparate treatment by Dr. de Mola.  These exhibits are notices of disciplinary action or letters of caution/warning in connection with incidents involving other employees.  The employees' names have been redacted from these documents, and the documents do not reference the race of the employees to whom they are directed or concern.  Defendant has objected to admission of each of these exhibits and contends that plaintiff, who has no personal knowledge of the incidents which they concern, has offered no competent proof relative to these incidents.  In the court's opinion, defendant's objection is well taken.  However, the evidence, even if proper and admissible, would not suffice to sustain plaintiff's burden.

turned toward Dr. Dumal and threw coffee on her.  Plaintiff
submits that this incident, which involved actual direct physical
contact between Dr. Dumal and Dr. Herbrandson, was far more
serious that his incident with Dr. Dumal and yet in that instance,
neither participant was disciplined, although Dr. Dumal was
required to accept responsibility for her actions.

In the court's opinion, the circumstances of that incident,
and status of the participants, is dissimilar to plaintiff's
incident.  When questioned about the confrontation between Dr.
Dumal and Dr. Herbrandson, Dr. de Mola explained that when he
investigated the incident, Dr. Dumal and Dr. Herbrandson gave
different accounts of what had occurred; Dr.  Dumal had flatly
denied grabbing Dr. Herbrandson's wrist and hence denied there had
been any physical contact.  He testified that given the very
different version of events provided by Drs. Dumal and Herbrandson
and the fact that there were no witnesses to the incident, he
could not determine what had happened and did not pursue
disciplinary action.

In another alleged incident in March 1999, evidenced by
Exhibit P17, a (presumably) white employee at a plant in Water
Valley, Mississippi, who hit a coworker with an egg yolk while
engaged in horseplay with another coworker was not disciplined but
rather received only a letter of warning for conduct unbecoming of
a federal employee.  The circumstances of that episode are not at

all similar to those involving plaintiff's encounter with Dr.
Dumal.  It does not appear there was any suggestion that this
other incident involved any arguably violent or threatening
behavior by anyone; rather, it was merely an instance of
horseplay, which is in no way comparable to what transpired in
plaintiff's case.

Plaintiff cites two other instances of alleged employee
misconduct as evidence of similarly situated employees being
punished less severely than he; and yet neither of these incidents
is helpful to his case, either.

One, evidenced by Exhibit P18, relates to an employee
(assumed to be white) who was found to have made threatening
remarks to another agency employee.  Dr. de Mola wrote to an
employee relations officer on September 25, 2000 "recommending
appropriate action be taken against" the employee, but remarking
that since the subject employee's retirement had been scheduled
for September 22 (i.e., three days before the letter was written),
"this could be a mute [sic] case."  Whether this employee was
actually treated differently than plaintiff is unknown, for there
is nothing to indicate whether any action was taken against the
employee; but the letter itself tends to suggest that Dr. de Mola
*did* intend that disciplinary action be taken against that
employee, as was the case with plaintiff.

10

Exhibit P19 offered by plaintiff is a July 1997 suspension notice to another employee (race unknown) for conduct unbecoming a federal employee.  The notice recites that the employee had been previously counseled concerning his/her unacceptable behavior and use of unprofessional language in the course of his/her duties, and contains a finding of further threatening conduct and demeaning, derogatory and profane comments towards coworkers which resulted in a five-day suspension.  The court fails to perceive any relevance in this evidence, and certainly cannot conclude that it tends to support plaintiff's charge that he was treated differently, i.e., more harshly, than other similarly situated employees.

In addition to these incidents, plaintiff testified at trial that a white employee, Mike Ham, regularly went into the office and threw his helmet and hat and gloves and yet was only counseled about his behavior and given a letter of warning.  When questioned by plaintiff on this issue, Dr. de Mola testified that he did not recall dealing personally with that case, and although plaintiff represented that Dr. de Mola had given Ham only a letter of warning, plaintiff did not contend he had personal knowledge of this alleged situation and he pointed to no proof to support his assertion in this regard.

Despite plaintiff's evident belief in his case, it is plain to the court that none of the alleged instances upon which he

relies actually involve similarly situated individuals' being treated more favorably than plaintiff.  That being the case, the court concludes that plaintiff has failed to establish the elements of his prima facie case of race discrimination.[5]  It is clear to the court from the testimony and evidence that plaintiff's conduct during his meeting with Dr. Dumal on September 21, 1998 was not intended by plaintiff to be violent or threatening, and that his actions were misinterpreted or misperceived by Dr. Dumal.  In fact, the record contains evidence indicating that upon further reflection in the months following the incident, Dr. Dumal herself came to realize that plaintiff is a decent, nonviolent person, and that she had misread his actions and overreacted in her response to it. However, the question here is whether defendant's response to plaintiff's outburst, i.e., to seek and impose disciplinary action in the form of a one-day

_____

[5]    The court acknowledges plaintiff's assertion that Dr. de Mola's request for disciplinary action was improper because the standard procedure that he should have followed would have required that he first investigate the incident and get plaintiff's side of the story before pursuing disciplinary action. However, Dr. de Mola testified that he did interview a union representative who was present during the meeting between Dr. Dumal and plaintiff on September 21, who confirmed Dr. Dumal's version of what had occurred in the meeting. Moreover, he requested that the union president, Wesley Potts, talk to plaintiff to get his version of what had happened, and Mr. Potts had reported to Dr. de Mola that he could not determine from plaintiff what he contended had occurred because when he tried to talk to plaintiff, plaintiff reacted violently and refused to respond to his inquiries.  Plaintiff denies this occurred, but Dr. de Mola's testimony that Potts report this to him was credible.

suspension, was racially motivated; and in the court's opinion,
there is no evidence in the record that would support an inference
of discrimination.  The record discloses without contradiction
that before he requested that appropriate disciplinary action be
taken against plaintiff, Dr. de Mola had been presented with a
statement from plaintiff's supervisor that plaintiff had been
violent and had threatened her; the fact of plaintiff's actions in
the meeting with Dr. Dumal (though perhaps not his intent) had
been confirmed by the union representative present at the meeting;
and the union president had reported to Dr. de Mola that he had
tried to discuss the matter with plaintiff and plaintiff had
reacted violently.  There is no proof that similarly situated
white employees were treated more favorably than plaintiff under
remotely similar circumstances.  Therefore, plaintiff's claim of
race discrimination will be dismissed.

In addition to his federal claims for race and gender
discrimination and retaliation, plaintiff has alleged a claim for
defamation under state law based, apparently, on statements by Dr.
Dumal and Dr. de Mola that plaintiff had engaged in violent and
threatening behavior.  These statements were made solely in
connection with the request for disciplinary action relating to
plaintiff's conduct toward Dr. Dumal.  Under Mississippi law,

> any statement made by an employer against an employee
> when the statement in question affects the employee's
> employment is protected by a qualified privilege.  Young
> v. Jackson, 572 So. 2d 378, 383 (Miss. 1990).  These

> statements are privileged "absent bad faith or malice if
> the communications are limited to those persons who have
> a legitimate and direct interest in the subject matter."
> <u>Id.</u>

<u>Raiola v. Chevron U.S.A., Inc.</u>, 872 So. 2d 79, 85 (Miss. Ct. App.

2004).  <u>See</u> <u>also</u> <u>Bulloch v. City of Pascagoula</u>, 574 So. 2d 637,

642 (Miss. 1990) (Miss. 1990) (holding that "an employer enjoys a

qualified privilege when commenting on personnel matters to those

who have a legitimate and direct interest in the subject matter of

the communication"); <u>Young v. Jackson</u>, 572 So. 2d 378, 387 (Miss.

1990) (stating that "[w]ithout a showing of malice, abuse of a

qualified privilege by an employer is not actionable.").

Plaintiff has presented no evidence that the statements at issue

were made with actual malice, and his claim for defamation with

therefore be dismissed.

     Plaintiff's final claim is for breach of contract, and

although the basis for this claim is not clear from the complaint

or the pretrial order, it appears the claim is based on an

allegation that Dr. Dumal breached the terms of the collective

bargaining agreement by issuing him an AWOL for his absence from

work on Saturday, September 19, 1998.  According to plaintiff, the

collective bargaining agreement established the applicable rules

governing sick leave and prescribed a call-in procedure for

employees who are unable to work due to illness.  According to

plaintiff, by calling Dr. Dumal on the morning of September 19,

1998, he fully complied with the procedure provided by the

14

collective bargaining agreement.  He contends that Dr. Dumal's issuing an AWOL for his absence that Saturday violated the collective bargaining agreement.

The parties have presented conflicting evidence as to rules and policies governing when an employee could appropriately be classified as AWOL, and it does appear that there was and is some confusion with respect to the issue.  Ultimately, it seems most likely that the rules and policies of the defendant, which were not inconsistent with the collective bargaining agreement, granted a supervisor discretion to determine whether an employee was absent without leave, at least so long as the employee was given an opportunity to show otherwise.  Thus, the court is not persuaded that there was any breach of contract here.  However, even if there may have been a technical breach of the collective bargaining agreement, plaintiff has not demonstrated that he was harmed as a result.  The damage he claims relates to his suspension; and his suspension did not result from the AWOL, but rather from his response to Dr. Dumal's issuance of the AWOL.  His breach of contract claim will therefore also be dismissed.

Based on the foregoing, the court concludes that plaintiff has failed to prove any of his claims by a preponderance of the evidence.  Accordingly, his complaint will be dismissed with prejudice.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 14th day of September, 2006.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE